In re Jan E. CURRY, Debtor.

Jan E. CURRY, Plaintiff,

v.

WISCONSIN HIGHER EDUCATION AIDS BOARD, Massachusetts Higher Education Asst. Corp., Boston College Student Loan Office, Defendants.

Bankruptcy No. 83–03212.
Adv. No. 83–1077.

United States Bankruptcy Court,
E.D. Wisconsin.

July 23, 1984.

Jan E. Curry, pro se.

William H. Olson, Madison, Wis., for Wisconsin Higher Educ. Corp. and Massachusetts Higher Educ. Assistance Corp.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

In this adversary case, the plaintiff, Jan E. Curry ("debtor"), asks the Court to declare her student loan obligations to the named defendants discharged and alleges that requiring her to pay these loans would impose an undue hardship upon her, pursuant to § 523(a)(8)(B) of the Bankruptcy Code.[1]

---

1. § 523. EXCEPTIONS TO DISCHARGE.
   (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
   (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless,—

This case was tried before this Court on June 13, 1984. The debtor appeared *pro se* and the defendants appeared by Attorney William H. Olson. Following the taking of testimony and the receipt of documents into evidence, the Court took the matter under advisement.

The debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 30, 1983. She is 36 years old, single, with no legal dependents and currently resides at 4969 North 19th Street, Milwaukee, Wisconsin. She is presently employed at Marquette University as a secretary where she has worked since June 4, 1984. Her salary is approximately $952 per month gross.

Following her graduation from Milwaukee Lincoln High School in 1965, the debtor continued with her education in college. She has attended the following colleges during the following time periods:

| | | |
|---|---|---|
| Marquette University | — | 1968–1970 |
| Boston College | — | 1970–1976 |
| Marquette University | — | 1978–1982 |

While attending these colleges, the debtor obtained a series of student loans during 1971 through 1981, inclusive. Although the complaint designates both Massachusetts Higher Educational Assistance Corporation ("Massachusetts") and Boston College Student Loan Office as defendants, the evidence established one loan dated October 31, 1975 in the sum of $1,500 which was obtained through, guaranteed by and thereafter assigned to Massachusetts. The other ten loans introduced into the record were obtained through, guaranteed by, and later assigned to Wisconsin Higher Education Corporation ("Wisconsin"). They are as follows:

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

| DATE OF LOAN | FACE AMOUNT OF LOAN |
|---|---|
| 1. July 7, 1971 | $ 500.00 |
| 2. July 7, 1971 | 500.00 |
| 3. August 1, 1973 | 1,250.00 |
| 4. September 13, 1978 | 1,250.00 |
| 5. October 18, 1978 | 1,250.00 |
| 6. July 26, 1979 | 250.00 |
| 7. May 30, 1980 | 1,400.00 |
| 8. August 6, 1980 | 500.00 |
| 9. April 15, 1981 | 2,000.00 |
| 10. July 22, 1981 | 3,000.00 |

From the time the debtor obtained her first student loans up until the time she filed her petition in bankruptcy on August 30, 1983, she carried at least one-half the normal full time academic workload a portion of that time which, in turn, triggered a suspension of the repayment period, pursuant to § 523(a)(8)(A). There were other times, however, when she did not qualify for the suspension of repayment period. Upon tracing her record from 1971 to 1982, the Court finds that the debtor did not carry at least one-half the normal full-time academic workload during the following time periods:

| YEAR | PERIOD OF TIME NOT IN SCHOOL | AMOUNT OF TIME |
|---|---|---|
| 1973 | January-August | 8 months |
| 1974 | January-December | 12 months |
| 1975 | January-August | 8 months |
| 1976 | January-December | 12 months |
| 1977 | January-December | 12 months |
| 1978 | January-August | 8 months |
| 1982 | January-December | 12 months |
| 1983 | January-August * | 8 months |

* debtor filed bankruptcy on August 30, 1983.

By application of mathematical computations, including suspension of repayment periods and recognition that the student loans did not become due until nine months after the student ceased to carry at least one-half the normal full-time academic workload, this Court finds that the first three Wisconsin loans (two loans dated July 7, 1971 for $500.00 each and one loan dated August 1, 1973 for $1,250.00) became due more than five years before the filing of the debtor's petition. The seven other Wisconsin loans and the single Massachusetts loan, however, did not become due more than five years before the date the debtor filed her petition.

The total balance due on the Massachusetts loan as of the date of the trial on June 13, 1984, including accrued interest was $1,704.26. No evidence of collection costs was ever submitted to the Court at the trial and therefore any such costs will not be considered. The total balance of the seven Wisconsin loans which had not become due more than five years before the date the debtor filed her petition, including accrued interest up to the June 13, 1984 trial, was $9,811.45.

The debtor testified that up to the time she filed her petition in bankruptcy, she repaid a total of "approximately $100.00" on all of her outstanding student loans.

The debtor's monthly expenses total $1,062.90, which represent a negative cash flow of $110.69. These expenses are itemized on Exhibit "A" annexed to this decision. Her projected future earnings indi-

cate that she will be eligible for an increase in salary of up to seven per cent (7%) after she has been employed for one year at Marquette University. The debtor anticipates moving into an efficiency apartment which should reduce her monthly rent from $300.00 to $230.00 per month.

The debtor's past record of employment is sporadic. It indicates an inability on her part to retain employment for any long period of time. Before her present job at Marquette University (which she has only held since June 4, 1984), she worked at Johnson Controls as a receptionist from April, 1982 to June, 1984. She terminated this job due to her fear of being fired. Before that, she worked at the downtown Milwaukee YWCA as a receptionist from November, 1981 to January, 1982. Prior to that time, in 1981, she also worked at Marquette University for two months cleaning animal cages, performed temporary secretarial services and served as a cashier for two months at a Milwaukee food store.

Although she has no physical infirmities, she has experienced emotional disabilities throughout her life. They have affected her employment and provide a reason why she is unable to retain long term employment. She is presently receiving counseling in an effort to enable her to improve her job performance.

■ The three oldest notes due to Wisconsin (two for $500.00 each in 1971 and one for $1,250.00 in 1973), having become due more than five years before debtor filed her petition in bankruptcy, are discharged pursuant to § 523(a)(8)(A). The remaining seven notes due to Wisconsin and the one note due to Massachusetts did not become due more than five years (excluding suspension of any applicable repayment period) before the date of debtor's petition and are therefore not discharged under § 523(a)(8)(A). These notes are also, however, not discharged under the "undue hardship" provision of § 523(a)(8)(B). "Undue hardship" is a term not defined in the Code. It must be determined on a case by case basis. When considering "undue hardship" the Court must take into account a number of factors, including the debtor's present and future financial resources, debtor's ability to obtain and maintain continued employment, debtor's budget, and the good faith or lack of good faith demonstrated with respect to repayment by the debtor.

There may be circumstances which would justify a court discharging all or a portion of the debtor's student loan for "undue hardship". In the instant case, however, it would be inappropriate to do so. While this Court is fully cognizant of the debtor's emotional problems, it also must give due weight to a clear lack of good faith on her part with respect to repayment of her student loans. The Court is bound to follow legal precedent established in the Eastern District of Wisconsin. In the case of *Wisconsin Higher Education Aids Board and Wisconsin Higher Education Corporation v. Werner*, Case No. 79–B–1796 (E.D. Wis., filed November 24, 1982), Judge Reynolds, dealing with the issue of good faith effort to repay, stated (at page 12):

"(Debtor's) financial situation alone might have justified the bankruptcy court in discharging *part of* (debtor's) student loan debt. However (debtor's) failure to make a good faith effort to repay his student debt precludes discharge.

■ By analogy, a nominal payment by the debtor in the instant case of approximately $100 over a period of almost ten years and while she was gainfully employed, indicates a lack of good faith on her part with respect to repayment of the loans. Judge Reynolds in *Werner*, declared at page 15:

"The size of the student loans and the timing of the debtor's petition cause this court to conclude that the dominant purpose of the debtor's bankruptcy petition was to discharge his student debt. Thus, to discharge his student debt at this time would undercut the purpose of § 523."

In the case at bar, the Court notes that the debtor's non-student loan obligations total approximately $2,600.00, in contrast with her student loan obligations totalling ap-

proximately $14,200.00. Therefore, approximately 85 per cent of all of her debts are student loan obligations. The Court concludes that the dominant purpose in this case, as it was in *Werner,* was to discharge the debtor's student loans.

This Court therefore concludes that the debt due to Massachusetts is nondischargeable in the sum of $1,740.26, together with interest at the rate of seven per cent per annum. This Court also concludes that the debt due to Wisconsin is nondischargeable in the sum of $9,811.45, together with interest at the rate of seven per cent per annum. Because these amounts are calculated as of June 13, 1984, interest shall thereafter continue to accrue on the nondischargeable debts at the rate of seven per cent per annum.

The Court also believes that it is appropriate, as part of its order, to establish a repayment schedule by the debtor with respect to these nondischargeable debts. Based upon the debtor's present income and expenses, this Court believes that the maximum the debtor can repay at this time is $50.00 per month. The Court fully recognizes that these payments will be less than the accrued interest on the unpaid obligations. Nevertheless, the debtor is now unable to pay any higher sum. These monthly payments shall be applied to both the Wisconsin and Massachusetts obligations and shall be prorated between Wisconsin and Massachusetts. The debtor shall, at all times, keep Wisconsin fully advised of all changes in her address, employment and rate of pay. The debtor shall also promptly provide Wisconsin with copies of her annual income tax returns at such times as they are prepared and filed. Any substantial increase in income by the debtor shall constitute cause for Wisconsin and Massachusetts to apply to this Court for a revision in the repayment schedule. Any failure by the debtor to comply with the terms of this order shall constitute cause for Wisconsin and Massachusetts to enforce this judgment either in this Court or elsewhere as they deem appropriate.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

EXHIBIT "A"

MS. JAN E. CURRY
4975 N. 19TH STREET
MILWAUKEE, WISCONSIN 53209
JUNE 1, 1984

CASH FLOW REPORT

|  | 1982 | 1983 | 1984 18 PAYROLLS | 1984 AVG/MO. |
|---|---|---|---|---|
| INCOME |  |  |  |  |
| GROSS | $9,055.34 | $11,875.00 | $3,955.36 | $ 952.21 |
| TOTAL INCOME | $9,055.34 | $11,875.00 | $3,955.36 | $ 952.21 |
| DEDUCTIONS |  |  |  |  |
| FEDERAL WITHHOLDING | $1,027.46 | $ 1,420.94 | $ 444.08 | $ 106.90 |
| SOCIAL SECURITY | 606.72 | 795.74 | 261.68 | 62.96 |
| STATE WITHHOLDING | 304.65 | 460.62 | 162.27 | 39.09 |
| CHARITY |  | 104.00 | 16.56 | 3.99 |
| GROUP INSURANCE |  | 286.00 |  |  |
| DENTAL |  |  | 24.84 | 5.98 |
| MEDICAL |  |  | 24.84 | 5.98 |
| RENT |  |  |  | 300.00 |
| FOOD, LUNCH MONEY ETC. |  |  |  | 135.00 |
| TRANSPORTATION |  |  |  | 80.00 |
| PERSONAL |  |  |  | 65.00 |

|  | 1982 | 1983 | 1984 18 PAYROLLS | 1984 AVG/MO. |
|---|---|---|---|---|
| ENTERTAINMENT |  |  |  | $ 15.00 |
| MISCELLANEOUS |  |  |  | 100.00 |
| GAS HEAT |  |  |  | 93.00 |
| ELECTRIC |  |  |  | 50.00 |
| TOTAL DEDUCTIONS | $1,938.83 | $ 3,067.30 | $ 934.37 | $1,062.90 |
| NET CASH FLOW | $7,116.51 | $ 8,807.70 | $3,021.09 | ($ 110.69 ) |

\* THESE COLUMNS DO NOT INCLUDE SUCH EXPENSES AS RENT, GAS HEAT, TRANSPORTATION, ETC.

AS YOU CAN SEE, JAN'S 1984 AVERAGE MONTHLY EXPENDITURES EXCEED HER INCOME. IT IS IMPOSSIBLE FOR HER TO PAY ALL OF HER EXPENSES AT THE ABOVE RATE. I HAVE ENCLOSED COPIES OF HER 1982 & 1983 INCOME TAX RETURNS. ALSO I HAVE INCLUDED SOME OF HER EXPENSES SHOWN ABOVE.

s/ Alvin E. Hayes

ALVIN E. HAYES, C.P.A.