**In re Emerson H. ELLIOTT, Debtor.**

**BUD ANTLE, INC., Plaintiff,**

**v.**

**Emerson H. ELLIOTT, Defendant.**

**Bankruptcy No. 87–431–BKC–6P7.**
**Adv. No. 87–95.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 15, 1988.

S. Thomas Padgett, Tampa, Fla., for plaintiff.

Raymond J. Rotella, Orlando, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding is before the Court upon complaint seeking an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). A trial of this matter was held July 21, 1988, and upon the evidence presented, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Defendant was the former owner and operator of a sole proprietorship doing business under the name Emerson Elliott Produce Co., trading and brokering in agricultural products.

2. In February, 1984, the defendant supplied Produce Reporter Co. with information concerning the creditworthiness of his brokerage operation. Produce Reporter Co. is a publishing company which compiles financial information for subscribers to assist them in determining whether or not to extend credit to brokers such as the defendant.

The information which defendant supplied to Produce Reporter Co. suggested that Emerson Elliott Produce Co. had approximately $590,000 in assets and $453,000 in liabilities. Defendant further represented that his business had $285,000 in accounts receivable as opposed to $253,000 in accounts payable. It was defendant's understanding that this information would be published in the reporting company's "Blue Book" for distribution to various suppliers.

3. The credit information supplied to Produce Reporter Co. was false. The evidence shows that at this time the actual value of the receivables was approximately $46,000 due to the insolvency of three of defendant's suppliers. The evidence further indicates that in February, 1984, Emerson Elliott Produce Co. was itself insolvent with liabilities exceeding assets by approximately $103,000.

4. In April or May, 1984, Emerson Elliott Produce Co. applied for credit with Bud Antle, Inc., the plaintiff. Fran Grubbs, a credit manager for plaintiff, reviewed the information contained in the "Blue Book" and made the decision to extend credit to the defendant solely on that basis. Thereafter, Emerson Elliott Produce Co. made several large purchases of produce from plaintiff and by September 14, 1984, owed $49,167.05. This debt is still outstanding.

5. At the time defendant purchased the produce from plaintiff, defendant was insolvent and had neither the intention or ability to pay for the produce. For instance, during August and September of 1984, defendant purchased and resold approximately $55,000 worth of produce with-

out repaying any portion of his obligation to plaintiff.

The $55,000 derived from the sale of plaintiff's produce was instead deposited into the Emerson Elliott Produce Co. bank account at Barnett Bank. Shortly thereafter, on September 21, 1984, defendant withdrew $162,000 from that account and used the money to satisfy the mortgage on his homestead property. The $55,000 in sales proceeds derived from the sale of plaintiff's produce was included in the $162,000.[1]

6. At the time defendant withdrew the money to satisfy his mortgage, Emerson Elliott Produce Co. was insolvent and the $162,000 represented the bulk of its assets. Shortly after the funds were withdrawn, Emerson Elliott Produce Co. ceased doing business.

7. In October, 1984, plaintiff initiated administrative proceedings against defendant with the Department of Agriculture. On January 22, 1985, a judgment was entered against the defendant in the amount of $49,167.05, together with interest (13%) and reasonable attorney fees pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.*

8. After obtaining this judgment, plaintiff brought an action in state court to impose an equitable lien on defendant's homestead. Defendant promptly moved to dismiss the *lis pendens* which had been filed in connection with that action and on January 20, 1987, the motion was denied. Shortly thereafter, the defendant filed for protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

9. In his bankruptcy schedules the defendant has claimed as exempt his homestead property located in Seminole County, Florida. On April 17, 1987, plaintiff filed an objection to the defendant's claim of exemption insofar as it relates to the homestead property. More specifically, plaintiff sought to impose an equitable lien on defendant's property due to the prepetition conversion of non-exempt assets to exempt property. By order dated November 4, 1987, the Court overruled plaintiff's objection. *See, In re Elliott,* 79 B.R. 944 (Bkrptcy.M.D.Fla.1987).

## CONCLUSIONS OF LAW

■ An exception to discharge under § 523(a)(2)(A) requires a showing that the debtor obtained money, property, services, or an extension, renewal, or refinancing of credit based upon false pretenses, false representations, or actual fraud. Essential to this determination, is a finding that the false representation was made with intent to deceive or defraud creditors. *In re Roberts,* 82 B.R. 179 (Bkrptcy.Mass.1987). In this regard, the Court finds that the defendant had the actual intent to deceive and defraud plaintiff when he obtained his line of credit.

To support an exception to discharge under § 523(a)(2)(B) for use of a statement in writing, the plaintiff must prove by clear and convincing evidence (i) that the financial statement submitted is "materially false," (ii) that it "reasonably relied" upon the statement, (iii) in the "extension, renewal, or refinancing of credit," and that (iv) the defendant "caused [the statement] to be made or published with the intent to deceive." *In re Figueredo (International Bank of Miami, N.A. v. Figueredo),* 84 B.R. 856 (Bkrptcy.S.D.Fla.1988).

The Court finds that the financial statement submitted to Produce Reporter Co. was materially false in that it failed to disclose the true value of defendant's accounts receivables. This materially false statement was relied upon by plaintiff and served as the basis for its decision to extend credit to the defendant.

The Court finds further that plaintiff's reliance on the false financial statement was reasonable. The "Blue Book" is relied upon by various commodity suppliers in much the same way that Standard & Poors

---

1. In the Findings of Facts and Conclusions of Law entered November 4, 1987, on the objection to exemption hearing, the Court found that the $162,000 withdrawn from defendant's bank account did not include monies derived from the sale of plaintiff's produce. Upon reexamination of the evidence, the Court concludes that the opposite is in fact true.

financial ratings are used in the financial community. Furthermore, defendant represented to plaintiff's loan officer that the "Blue Book" was the most accurate record of his company's financial condition.

Finally, the Court finds that the defendant caused the information to be published with the intent to deceive. More specifically, the Court finds that defendant prepared the financial statements with full knowledge that the information contained therein was false. Obviously, defendant was trying to obtain better credit for himself and his business through what ever means possible. Under the circumstances, the Court concludes that the plaintiff is entitled to an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) in the amount of $49,167.05.

The Court now addresses plaintiff's request for attorney fees. Plaintiff suggests that the Court should award it attorney fees in the amount of $25,746.00 for pursuing its judgment in both the United States District Court and this Court. The Court does not agree.

Section 523(d) sets forth the statutory basis for the allowance of attorney fees in dischargeability actions. It provides:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

Both the statute and the legislative comments which accompany this section are silent as to whether the Court may assess costs and attorney fees against a defendant where the plaintiff-creditor succeeds in its dischargeability action.

Plaintiff contends that where the underlying debt is held non-dischargeable, an award or allowance of reasonable attorney fees incurred in collecting such debt should likewise be found non-dischargeable. Plaintiff cites *First American National Bank v. Crosslin*, 14 B.R. 656 (Bkrptcy.M.D.Tenn.1981) in support of its position. There, the bankruptcy court stated:

> If it is appropriate, as a matter of bankruptcy policy, to provide for the recovery by honest debtors of attorney fees when they are successful in fraud dischargeability proceedings, it would appear to be equally appropriate, as a matter of bankruptcy policy, to permit honest creditors to recover attorney fees which dishonest debtors have contracted to pay. The bankruptcy policy considerations are the same—to ensure that the honest do not forfeit their rights out of concern for the expenses of litigation.

*Id.*, at 658.

Other courts have reached similar conclusions and when faced with a question of whether attorney fees and costs are dischargeable, generally hold that the request stands or falls with the dischargeability of the primary debt. *See, In re Sposa*, 31 B.R. 307 (Bkrptcy.E.D.Va.1983); *In re Glover*, 16 B.R. 213 (Bkrptcy.M.D.Fla.1981) (Paskay, J.); *Matter of Chambers*, 36 B.R. 42 (Bkrptcy.W.D.Wis.1984); *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987).

Another line of cases supports a contrary view. For instance, in *In re Penney*, 76 B.R. 160 (Bkrptcy.N.D.Cal.1987) the Court ruled that under the Bankruptcy Code, there is no right to attorneys' fees unless the statute so provides. Because no statutory right to attorney fees is set forth in § 523, the Court disallowed the creditors request for attorney fees. *Accord, Dougherty v. Brackett*, 51 B.R. 987 (Bkrptcy.D.Col.1985); *In re Lewis*, 31 B.R. 83 (Bkrptcy.W.D.Okla.1983); *Matter of Meyers*, 61 B.R. 891 (Bkrptcy.N.D.Ga.1986); and *In re Gedeon*, 31 B.R. 942 (Bkrptcy.D.Colo.1983).

The Court finds the reasoning of the latter cases more persuasive. In order

for the Court to award attorney's fees for the plaintiff in a dischargeability action, the right must be set forth clearly in 11 U.S.C. § 523. Congress deals with fees only in the context of § 523(d). If Congress intended to allow a creditor to recover attorney fees for pursuing a dischargeability claim, it could have easily spoken. It did not. The Court concludes, therefore, that plaintiff's request for $25,746.00 in attorney fees should be denied.

The Court will stand upon its earlier decision not to impose an equitable lien on defendant's homestead property, but to the extent these findings may conflict with those entered on plaintiff's objection to the defendant's claim of exemptions, these findings shall control.

The Court will enter a separate final judgment in accordance with these findings.

## FINAL JUDGMENT

Upon Findings of Fact and Conclusions of Law separately entered, it is ORDERED as follows:

1. Final Judgment is entered in favor of the plaintiff, Bud Antle, Inc., and against the defendant, Emerson H. Elliott, in the amount of $49,167.05, for which let execution issue.

2. This Final Judgment is declared to be an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (B).

3. Requests by plaintiff for attorney's fees and interest are DENIED.