In re Lance Richard KELLAR, Debtor.

MEMBERS CREDIT UNION, Plaintiff,

v.

Lance Richard KELLAR, Defendant.

Bankruptcy No. 87–01682.
Adv. No. 88–0022.

United States Bankruptcy Court,
N.D. New York.

June 8, 1989.

Willard R. Pratt, III, P.C., Vernon, N.Y., for plaintiff.

Lance Richard Kellar, pro se.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This cause comes before the Court on the request of the Members Credit Union ("Plaintiff" or "the Union") for the reinstatement of a default judgment of nondischargeability and the incorporation therein of attorney's fees and disbursements, interest charges and costs, in addition to the underlying debt.

## FACTS

On November 24, 1987, Lance Richard Kellar ("Debtor") filed *pro se* a voluntary petition under Chapter 7 of the Bankruptcy Code, §§ 101–1330 (West 1979 & Supp. 1989) ("Code"). His schedules listed $47,-717.82 [sic] in unsecured debt and $2,173.83 in property and claimed a $10,000.00 exemption in a 1987 Pontiac "Fiero" automobile "currently in possession of GMAC ... [and] necessary for transportation to work and to find employment." The Union was listed as one of the Debtor's twenty-three creditors, with a claim in the amount of $9,456.16 arising from personal loans in the years 1985 through 1987. The notice for the meeting of creditors, pursuant to Code § 341, also set forth a February 26, 1988 filing deadline for complaints commenced under Code §§ 523 and 727.

On February 26, 1988, the Union commenced an adversary proceeding to determine nondischargeable the sum of $9,385.01, and related charges for interest, attorney's fees, costs and disbursements, based upon fraudulent misrepresentations and larceny.[1] This sum represented the balances due on November 30, 1987 from the execution of a line of credit and a car loan between September 1986 and July 1987. The affidavit of mailing filed with the Bankruptcy Clerk indicated that the Union had served the Summons and Notice of Pre–Trial and Adversary Complaint on the Debtor and the Chapter 7 Trustee on March 11, 1988 by ordinary mail.

The Debtor was listed as *pro se* on the adversary proceeding cover sheet. No answer to the Union's complaint was filed nor did the Debtor make an appearance at the pre-trial conference on April 19, 1988, whereupon the Court granted the Union a default judgment. On September 16, 1988, the Bankruptcy Clerk sent out a notice scheduling a hearing for September 27, 1988 on the Plaintiff's failure to file a proposed order and default judgment. When Plaintiff failed to appear, the Court's oral Order granting default judgment was

---

1. While unidentified in the complaint, the Court assumes the adversary proceeding was predicat-

ed upon Code § 523(a)(2) and (4).

vacated and a trial date for the underlying adversary was re-scheduled for December 19, 1988.

On December 19, 1988, Plaintiff's counsel appeared and sought the reinstatement of the default judgment and requested time to submit a memorandum of law in support of its claim for attorney's fees.

On January 24, 1989, Union's counsel submitted a memorandum of law and proposed judgment for $12,999.27 which included 1) balances of $3,270.31 and $6,114.70 due on two debts, 2) interest from November 30, 1987 to April 19, 1988 amounting to $206.75 and $279.51, 3) attorney's fees of $3,128.00, one-third of the balance due on the two debts, and 4) unspecified costs and disbursements. An attached "Statement for Judgment" itemized taxing and filing costs at $140.00 for a total proposed judgment of $13,139.27. The Union also simultaneously filed a supporting affidavit and time sheet from its attorney of a $907.50 fee consisting of 11.7 hours logged in at an hourly rate of $75.00, and a $30.00 disbursement incurred for copying, telephone and Federal Express charges.

The Union maintains that it should be awarded attorney's fees as part of the collection costs under the debt contract, or, in the alternative, as costs pursuant to Bankruptcy Rule ("Bankr.R.") 7054. *See* Memorandum of Law (rec'd Jan. 24, 1989).

At the Court's request, the Union submitted a copy of the credit agreement applicable to both loans on February 27, 1989, which bore the Debtor's signature dated September 24, 1986. The pertinent provision in this agreement read as follows: "COLLECTION COSTS: You promise to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable attorney fees."

Thereafter, the matter was submitted for decision.

**2.** The Court will treat the Union's oral request for the reinstatement of the default judgment as part of the overall relief sought. Furthermore, while the Plaintiff only addressed the issue of attorney's fees in its memorandum of law, the

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.A. §§ 1334 and 157 (West Supp.1989) and renders the following findings of fact and conclusions of law in accordance with Bankr.R. 7001(6), 7008(b), 7052, 7054, 7055 and 9021.

## ISSUES

Whether the judgment by default of nondischargeability should be reinstated and, if so, what is to be included in the judgment of nondischargeability? [2]

## DISCUSSION

At the outset, the Court observes that its role in adversary proceedings commenced under Code § 523 is twofold: to determine whether or not a debt is dischargeable and to fix the amount of the debt. *See Montalto v. Sobel (In re Sobel)*, 37 B.R. 780, 786 (Bankr.E.D.N.Y.) (Code § 523(a)(2)(A)).

With respect to the determination of dischargeability, the Court concludes that it is appropriate to re-enter the nondischargeable judgment by default pursuant to Bankr.R. 7055 since the Plaintiff's service of process was proper and at no time in these entire proceedings was the Debtor responsive to the Union's formal Court action, nor did he make any kind of appearance, even after being served with notice of the rescheduled trial date. *See Muniz v. Vidal*, 739 F.2d 699, 700–01 (1st Cir.1984); *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975), *cert denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Parise v. Riccelli Haulers, Inc.*, 672 F.Supp. 72, 74 (N.D.N.Y.1987). Therefore, all of the factual allegations in the complaint, save for those going to damages, are accepted as true. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981) (citations omitted).

attached "Statement For Judgment," in including as a matter of course, interest charges, costs and disbursements, raised their relation to the nondischargeable judgment and will be addressed as well.

Even allowing for the Debtor's *pro se* status, the record's silence on his good faith attempts to comply with the applicable procedures or to obtain an attorney, support the entry of a default judgment, which he had been apprised of in the original Summons and Notice of Pre-trial. *See Belford v. Martin–Trigona (In re Martin–Trigona),* 763 F.2d 503 (2d Cir.1985); *Traguth v. Zuck,* 710 F.2d 90 (2d Cir.1983).

The Court now turns to the questions raised by the fixing of the debt.

■ Under the longstanding American Rule, attorney's fees are not ordinarily recoverable to the prevailing party absent a basis in statute or enforceable contract or unless imperative to further the interests of justice such as in protecting a common fund or rectifying certain aggravated conduct like willful disobedience of a court order, bad faith or vexatious, wanton or oppressive behavior. *See Summit Valley Industries, Inc. v. Local 112, Etc.,* 456 U.S. 717, 721–26, 102 S.Ct. 2112, 2114–17, 72 L.Ed.2d 511; *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247–59, 95 S.Ct. 1612, 1616–22, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717–18, 87 S.Ct. 1404, 1406–07, 18 L.Ed.2d 475 (1967); *Pucello v. Bisignani (In re Bisignani),* Case No. 87–01555, Adv.Pro.No. 88–0004, slip op. at 4–5 (Bankr.N.D.N.Y. Oct. 6, 1988).

> Since the approach taken by Congress to this issue [fee shifting] has been to carve out specific exceptions to a general rule that federal courts cannot award attorneys' fees beyond the limits of 28 U.S.C. § 1923, those courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases.

*Alyeska Pipeline Service Co. v. Wilderness Society, supra,* 421 U.S. at 269, 95 S.Ct. at 1627.

■ Thus, the allowance of certain costs under 28 U.S.C.A. § 1920 (West 1966 & Supp.1989) (which explicitly incorporates 28 U.S.C.A. § 1923) and its rule counterpart, Federal Rule Civil Procedure ("Fed.R.Civ. P.") 54(d), *see Wells v. Dallas Independent School District,* 576 F.Supp. 497, 510–11 (N.D.Tex.1983), does not include attorney's fees. *See Fleischmann Distilling Corp. v. Maier Brewing Co., supra,* 386 U.S. at 720, 87 S.Ct. at 1408; *Grove v. Fulwiler (In re Fulwiler),* 624 F.2d 908, 910 n. 3 (9th Cir. 1980). *See also* 28 U.S.C.A. § 1927 (West Supp.1989) (distinguishing between excess costs, expenses and attorneys' fees). *Cf. Oates v. Oates,* 866 F.2d 203, 205–08 (6th Cir.1989) (Fed.R.Civ.P. 68).

Similarly, Bankr.R. 7054(b), the more permissible bankruptcy analogue to Fed.R. Civ.P. 54(d), does not generally encompass an award of attorney's fees absent exceptional circumstances demanding equitable redress, since "[c]osts are merely court costs incurred from the filing of the proceeding." *GATX Terminals Corp. v. A. Tarricone, Inc. (In re Tarricone, Inc.),* 83 B.R. 253, 255 (Bankr.S.D.N.Y.1988) (citing to *Roadway Express v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)); *In re Roco Corp.,* 37 B.R. 770, 775 (Bankr. D.R.I.1984). *See, e.g., LaTempa v. Long (In re LaTempa),* 58 B.R. 538 (Bankr.W.D. Va.1986); *Cameron v. Faszer Bros. & Sons, Inc. (In re Faszer Bros. & Sons, Inc.),* 34 B.R. 442, 444 (Bankr.D.Ore.1983). *But see In re J & A Concrete Contractors, Inc.,* 58 B.R. 51 (Bankr.W.D.Tex.1986) (attorney fees and expenses imposed as sanctions treated as costs under Bankr.R. 7054); *AM International, Inc. v. Tennessee Valley Authority (In re AM International, Inc.),* 46 B.R. 566, 578 (Bankr.M.D. Tenn.1985) ("Costs may be awarded under Bankruptcy Rule 7054 and attorney's fees may be included in these costs when specifically requested in the pleadings under Bankruptcy Rule 7008(b).").

Likewise, post-petition interest charges, not being in the nature of court costs, are excluded from the scope of costs under Bankr.R. 7054(b).

An action to determine the dischargeability of a pre-petition debt arises uniquely and exclusively under Code § 523 and, as such, is purely a federal cause of action. *See Brown v. Felsen*, 442 U.S. 127, 134–39, 99 S.Ct. 2205, 2211–13, 60 L.Ed.2d 767 (1979) (nondischargeability proceeding under the Bankruptcy Act of 1898);[3] *In re Fulwiler, supra*, 624 F.2d at 909–10 (same); *Smith v. Barbre (In re Barbre)*, 91 B.R. 846, 848 (Bankr.S.D.Ill.1988) (Code § 523(a)(5)); *Castner Knott Co. v. Wilson (In re Wilson)*, 12 B.R. 363, 368 (Bankr.M.D.Tenn.1981) (Code § 523(a)(2)); *Kuehne v. Huff (In re Huff)*, 1 B.R. 354, 356 (D.Utah 1979) (nondischargeability proceeding under Bankruptcy Act of 1898).

Therefore, Code § 523(d) is the sole relevant statutory authorization for "fee-shifting" in dischargeability actions in bankruptcy courts. *See All American Of Ashburn, Inc. v. Fox (In re Fox)*, 725 F.2d 661, 662–63 (11th Cir.1984); (Code § 523(a)(2)(A)). In only providing for the debtor's reimbursement of reasonable attorney's fees and costs where a creditor's dischargeability action on a consumer debt is not substantially justified, similar awards to a successful creditor are explicitly and specifically precluded under the statute. This evinces a Congressional policy determination to, in limited circumstances, protect the honest debtor's fresh start and neutralize leverage a creditor may wield. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 80 *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5866; H.R.Rep. No. 595, 95th Cong., 1st Sess. 130–31, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6091–92.

However, where there is a valid and enforceable contract, the American Rule exception permits attorney's fees in dischargeability actions. *See, e.g., Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1167–68 (6th Cir.1985) (Code § 523(a)(2)(B)); *Chase Manhattan Bank v. Birkland*, 98 B.R. 35 (W.D.Wash.1988) (Code § 523(a)(2)(A)); *Manufacturers Hanover Trust Co. v. Sterling (In re Sterling)*, 67 B.R. 294, 296 (Bankr.D.R.I.1986) (Code § 523(a)(2)(A)); *Walter E. Heller & Co. v. Byrd (In re Byrd)*, 41 B.R. 555, 564 n. 24 (Bankr.E.D.Tenn.1984) (Code § 523(a)(2)(B)); *Primm v. Foster (In re Foster)*, 38 B.R. 639, 641–42 (Bankr.N.D. Tenn.1984) (Code § 523(a)(2)(A)) (citing to *First American National Bank v. Crosslin*, 14 B.R. 656 (Bankr.M.D.Tenn.1981) (Code § 523(a)(2)(A)). *Cf. Jennen v. Hunter (In re Hunter)*, 771 F.2d 1126, 1131 (8th Cir.1985). *Citibank (South Dakota), N.A. v. Senty (In re Senty)*, 42 B.R. 456, 461–62 (Bankr.S.D.N.Y.1984) (Code § 523(a)(2)(A)). *Contra In re Iaquinta*, 98 B.R. 919 (Bankr.N.D.Ill.1989) (Code § 523(a)(6)); *Bud Antle, Inc. v. Elliott (In re Elliott)*, 93 B.R. 776, 779–80 (Bankr.M.D.Fla.1988) (Code § 523(a)(2)(A, B)); *Sears, Roebuck and Co. v. Penney (In re Penney)*, 76 B.R. 160 (Bankr.N.D.Cal.1987) (Code § 523(a)(6)); *Emerald Empire Banking Co. v. Woods (In re Woods)*, 25 B.R. 16, 17–18 (Bankr.D.Or.1982) (Code § 523(a)(2)(A, B)).

■ Thus, where not contemplated pre-petition and memorialized into a written agreement or deemed necessary to thwart aggravated conduct, "[a]ttorney fees incurred in the bankruptcy proceeding are post-petition debts and not properly a matter for consideration in a dischargeability action." *In re Barbre, supra*, 91 B.R. at 849.

■ With regard to interest charges, the general rule in bankruptcy is that to avoid unfairness between competing creditors and further administrative convenience in paying allowed claims and liquidating the estate, interest on the debt stops at the filing of the petition and any unmatured interest does not become part of the claim. *See Bruning v. United States*, 376 U.S. 358, 362, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964) (nondischargeable tax debt under Bankruptcy Act of 1898); *United States v. River Coal Co., Inc.*, 748 F.2d 1103, 1106

---

**3.** The concepts of nondischargeability that existed under the Act have remained basically unchanged under the Code.

(6th Cir.1984) (same). *See also* Code § 502(b)(2).

■ However, where, as here, the debt owing the creditor is determined nondischargeable against a debtor personally, those concerns are inapplicable and the interest should continue to accrue post-petition as it has no effect on the assets of the bankruptcy estate. *See Allen v. Romero (In re Romero),* 535 F.2d 618, 623 (10th Cir.1976) (nondischargeable debt for breach of fiduciary duty under Bankruptcy Act of 1898); *In re Sobel, supra,* 37 B.R. at 786. Interest is then an integral part of the continuing debt, representing the cost of the use of the monies due a creditor and compensation for delay of repayment. *See Bruning v. United States, supra,* 376 U.S. at 360, 84 S.Ct. at 907. *See also* BLACK'S LAW DICTIONARY 730 (5th ed. 1979).

This treatment comports with the compensatory purpose of Code § 523, *Pisano v. Verdon (In re Verdon),* 95 B.R. 877, 881–82 (Bankr.N.D.N.Y.1988), and more specifically Code § 523(a)(2), in barring the discharge of those actual costs sustained from a debtor's fraudulent procurement of money. *See In re Martin, supra,* 761 F.2d at 1163; *Chase Manhattan Bank v. Birkland, supra,* 98 B.R. at 35; *In re Foster, supra,* 38 B.R. 640–41; *In re Sobel, supra,* 37 B.R. at 786; *Builders Lumber & Supply Co., Inc. v. Fasulo (In re Fasulo),* 25 B.R. 583 (Bankr.D.Conn.1982) (Code § 523(a)(2)(A), (a)(4); *In re Wilson, supra,* 12 B.R. at 363. *See also Lathouwers v. Lathouwers (In re Lathouwers),* 54 B.R. 205, 206 n. 1 (Bankr.Colo.1985) (Code § 523(a)(5)); *Curry v. Wisconsin Higher Education Aids Board (In re Curry),* 41 B.R. 312 (Bankr.Wis.1984) (Code § 523(a)(8)(B)).

Thus, the dual policy of making the creditor whole and deterring fraudulent conduct is served by awarding a successful plaintiff in a dischargeability action the contractually agreed upon rate of interest, and all of its rights under the contract including attorney's fees, until satisfaction of the debt. *See Chase Manhattan Bank v. Birkland, supra,* 98 B.R. at 36–37; *In re Foster, supra,* 38 B.R. at 640. *Cf. Household Finance Corp. v. Danns (In re Danns),* 558 F.2d 114, 116 n. 6 (2d Cir.1977) (finance charges). The rehabilitative principle of narrowly construing an exception to discharge under Code § 523 in favor of the debtor has no place where the debtor is dishonest. *See In re Hunter, supra,* 771 F.2d at 1130 (quoting *In re Wilson, supra,* 12 B.R. at 370); *In re Huff, supra,* 1 B.R. at 357.

■ With respect to establishing the amount of the debt in the case at bar, the Court first concludes that post-petition attorney's fees are includable in the Union's judgment because of the enforceable contractual provision in the credit agreement and the notice given in the complaint pursuant to Bankr.R. 7008(b). However, the Court finds the reasonable amount of attorney's fees and disbursements to be $907.50, as itemized, rather than one-third of the principal balances, as requested. Second, the Court determines that interest charges at the contract rate of interest are included in the judgment, to be computed at the contract rate until its entry and at the legal rate pursuant to 28 U.S.C.A. § 1961 (West 1982 & Supp.1989), until the debt is satisfied. Third, the Court in its discretion will allow the nondischargeability of court costs here.

Neither the plain language or policies of Title 11 nor the doctrine of the American Rule call for a different result.

Accordingly, it is hereby

ORDERED:

1. That the Union's request for reinstatement of the nondischargeability judgment by default is granted, and

2. That the Union shall have a judgment of nondischargeability by default to include a) the combined balances due on the date of filing of $9,385.01, b) interest at the contract rate to the judgment's entry and then at the legal rate until repayment, c) attorney's fees and disbursements in the amount of $907.50, and d) costs of $140.00 pursuant to Bankr.R. 7054, and

3. That the Union shall submit judgment accordingly.