**In re Kamal M. SHELBAYAH, Debtor.**

**Bankruptcy No. 93–75233.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 15, 1994.

---

Karen F. Horner of Rogers & Cates, P.C., Atlanta, GA, for debtor.

Shayna M. Steinfeld of Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for Georgia Higher Educ. Assistance Corp.

### DECISION AND ORDER REGARDING OBJECTION TO PROOF OF CLAIM OF GEORGIA HIGHER EDUCATION ASSISTANCE CORPORATION

JAMES E. MASSEY, Bankruptcy Judge.

The Debtor in this case objects to the proof of claim of Georgia Higher Education Assistance Corporation ("GHEAC") on the ground that the claim is excessive because it includes unauthorized postpetition interest. In its response, GHEAC contends that postpetition interest is nondischargeable and that its claim should be allowed in its entirety.

The court held a hearing on the objection on February 28, 1994, and heard argument from counsel for the Debtor and counsel for GHEAC. Based upon the record in this Chapter 13 case, the court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

GHEAC filed a proof of claim on December 16, 1993, asserting a priority claim in the amount of $7,347.43. Attached to the proof of claim are copies of the first page of the proof of claim of Student Loan Marketing Association/Georgia Student Finance Authority ("SLMA") in the amount of $5,905.65 filed as an unsecured claim on November 22, 1993, a note to SLMA purportedly signed by the Debtor, and an assignment of the note to GHEAC. SLMA had attached to its proof of claim a disclosure statement, which states

that the original principal balance of the loan was $5,246.00 and that in 1991, interest in the amount of $87.31 was added to principal, for a new principal of $5,333.31. Neither GHEAC nor SLMA attached a schedule to the proofs of claim showing how each of them computed the claim. In its response to the objection GHEAC states that the principal amount of the claim is $5,905.65 and that interest will accrue in the amount of $1.29 per day while the plan is pending for total postpetition interest of $1,441.78.

In the objection to the proof of claim, the Debtor concedes a prepetition claim in the amount of $5,333.31, which is the amount of debt shown on Schedule F, the Debtor's schedule of unsecured creditors.

GHEAC presented no evidence at the hearing to support the amount of its claim as of the date on which the Debtor filed the petition. The court cannot determine from the attachments to the proof of claim the principal amount of the debt on the date of filing or what amount of interest, if any, may have been due under the terms of the note on that date. The undisputed amount of GHEAC's claim as of the filing of the petition is $5,333.31. At the hearing held on February 28, 1994, the Debtor conceded that the indebtedness to GHEAC as of the time of the filing of the petition is nondischargeable pursuant to 11 U.S.C. § 523(a)(8).

### CONCLUSIONS OF LAW

The issues presented by this case are whether postpetition interest on a debt that is nondischargeable under section 523(a)(8) is nondischargeable under section 1328(a) and, if so, whether a claim for such interest is allowable. The court holds that a debt for such interest is nondischargeable, but that the claim against the estate for such interest is not allowable.

■ Section 1328(a) of the Bankruptcy Code provides in part that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt— ... (2) of the kind specified in paragraph (5), (8) or (9) of section 523(a) of this title...." Section 502(b)(2) provides in relevant part

that if an objection to a claim is made, the court "shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in lawful currency of the United States in such amount, except to the extent that— ... (2) such claim is for unmatured interest."

The Debtor argues that because section 1328(a) grants a discharge to the debtor of "all debts ... disallowed under section 502" and because postpetition interest is not allowable under section 502(b)(2), interest accruing postpetition on a nondischargeable debt is dischargeable. The flaw in the Debtor's analysis is that it fails to take into account the relevant balance of section 1328(a) beginning with the words "except any debt." Specifically, the Debtor has failed to focus on the meaning of the word "debt" in the exception to the general grant of a discharge in section 1328(a) and in section 523(a)(8).

The term "debt" is defined in 11 U.S.C. § 101(12) as a "liability on a claim." Section 101(5) defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, *unmatured,* disputed, undisputed, legal, equitable, secured, or unsecured." (Emphasis added.) Thus, a liability on a claim for unmatured interest is a debt.

Section 523 deals with the dischargeability of certain types of debt. Nothing in section 523 limits or changes the definition of the term "debt" as used in that section. A debt that is nondischargeable under section 523(a)(8) is the entire debt, including a claim for unmatured interest. Therefore, section 1328(a) discharges a debt under section 502(b)(2) for unmatured interest, except a debt for unmatured interest that is nondischargeable under section 523(a)(8).

There is no suggestion in the Bankruptcy Code that a defined term such as "debt" means one thing in one section but something else in another section. If a defined term such as "debt" meant something different in sections 523(a)(8) and 1328(a) than the definition in section 101, one would expect at least some mention of that change in meaning. None appears. Section 101 of the Bankruptcy Code begins with the simple words "In this title" and thereby makes plain

that a defined term has the meaning given in section 101 and not a restricted subset of that meaning. .

The only reason to read the word "debt" in sections 523(a)(8) and 1328(a) as not including unmatured interest would be to carry out the policy of section 502(b)(2) to achieve fairness among unsecured creditors. The absurdity of the Debtor's construction of the scope of the term "debt" comes into focus when one considers the alternative course of action available to GHEAC. The Debtor's argument, that the claim for unmatured interest is discharged, rests on the reference in section 1328(a) to the discharge of debts disallowed pursuant to section 502. If GHEAC had filed no claim in the Debtor's Chapter 13 case, its claim for postpetition interest could not be disallowed, and GHEAC could have pursued the Debtor once the case were dismissed or closed for both prepetition debt *and* postpetition interest.[1]

The construction urged by the Debtor in this case would mean that the policy of fairness embodied in section 502 requires a creditor such as GHEAC to forego future interest as the price of filing a claim. This construction of congressional intent not only has no basis in the statute or legislative history, but also it is unnecessary to make unmatured interest dischargeable in order to promote a policy of fairness. The Debtor's construction would transform a policy of fairness among all creditors into one that favors creditors holding garden variety claims by encouraging a creditor holding a nondischargeable claim not to file a claim. Creditors holding dischargeable claims would receive the dividend that the creditor holding the nondischargeable claim elects to forgo. The creditor holding a nondischargeable claim would be presented with a classic Hobson's choice: take the lame nag of less than the full amount of the debt now or run the risk that the next horse will be too sick to ride at all. That the next horse might be a thoroughbred resulting in full repayment of all principal and interest is irrelevant. The theory being tested is one that would encourage decisions that might result in recoveries of educational loans smaller than those where proofs of claims were filed. To that extent, the Debtor's construction conflicts with the clearly stated policy to collect educational loans.

If, on the other hand, creditors such as GHEAC always filed claims, the Debtor's construction would transform the policy of fairness among creditors into a windfall for debtors with respect to postpetition interest that debtors would not be required to pay. The Debtor's dubious construction would conflict with the policy of collecting educational loans in full but would not affect in the slightest degree the amount each unsecured creditor would receive relative to all other unsecured creditors.

■■■ In short, the allowance or disallowance of claims is unrelated to the dischargeability of those claims under section 523. By disallowing a claim for unmatured interest, section 502(b)(2) implements a policy of fairness among unsecured creditors; it is unnecessary to the implementation of that policy that a claim for unmatured interest be dischargeable. The policy of collecting nondischargeable educational loans cannot be served to its fullest extent without declaring unmatured interest on such loans nondischargeable.

Almost all courts that have considered the issue presented have concluded that the disallowance of postpetition interest has no effect on the dischargeability of a claim for, and an individual's future liability for, such interest. *Bruning v. U.S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *Hanna v. U.S. (In re Hanna)*, 872 F.2d 829 (8th Cir. 1989); *Burns v. United States (In re Burns)*, 887 F.2d 1541 (11th Cir.1989); *Jordan v. Colorado Student Loan Program (In re Jordan)*, 146 B.R. 31 (D.Colo.1992) (district court affirmed the bankruptcy court's order refusing to confirm a Chapter 13 plan that provided for the tolling of accrued interest on the student loans *and* for the discharge of that interest); *Members Credit Union v. Kellar (In re Kellar)*, 125 B.R. 716 (Bankr. N.D.N.Y.1989); *Cline v. IRS (In re Cline)*, 100 B.R. 660 (Bankr.W.D.N.Y.1989). The

---

1. Thus, it should be clear that the policy at stake is most certainly not that a holder of nondischargeable claim under section 523(a)(8) should never recover postpetition interest.

foregoing cases and several others dealing with this issue decided after the enactment of the Bankruptcy Code rely heavily on the pre-Code decision of the Supreme Court in *Bruning*.

In *Bruning*, the issue was whether postpetition interest on nondischargeable taxes was dischargeable. The Supreme Court observed that the policy underlying the disallowance of unmatured interest did not conflict with a rule that such interest was nondischargeable. The Court focused on the logic of providing for the collection of interest on a nondischargeable debt, stating:

> In most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt. Interest on a tax debt would seem to fit that description. Thus, logic and reason indicate that postpetition interest on a tax claim excepted from discharge by § 17 of the Act should be recoverable in a later action against the debtor personally, and there is no evidence of any congressional intent to the contrary.

.     .     .     .     .

Petitioner asserts that the traditional rule which denies post-petition interest as a claim against the bankruptcy estate also applies to discharge the debtor from personal liability for such interest even if the underlying tax debt is not discharged by § 17. We hold that it does not so apply.

The basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience. These reasons are inapplicable to an action brought against the debtor personally. In the instant case, collection of postpetition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors. ... Here, we find the reasons—and thus the rule—inapplicable, and we hold that post-petition interest on an unpaid tax debt not dis-

charged by § 17 remains, after bankruptcy, a personal liability of the debtor.

*Bruning,* 376 U.S. at 362–63, 84 S.Ct. at 908 (footnotes omitted).

In *Hanna,* the Eighth Circuit resolved the conundrum that would be presented if a debt were determined to be nondischargeable but subject to a collateral estoppel defense. Specifically, the court noted that the disallowance of a claim may sometimes be a bar to the relitigation of that claim in a later case between the creditor and the debtor. Like the Debtor here, the debtors in *Hanna* contended that section 502(b)(2) barred the collection of postpetition interest. In ruling that the debt for postpetition interest was not discharged, the Eighth Circuit stated:

> Sections 502(b)(2) and 523(a)(1) of the Code, read together, are not entirely clear. The House Report accompanying the Bankruptcy Reform Act of 1978, explaining section 523, states: 'If the taxing authority's claim has been disallowed, then it would be barred by the more modern rules of collateral estoppel from reasserting that claim [a]gainst [sic] the debtor after the case was closed.' H.R.Rep. No. 595, 95th Cong., 2d. Sess. at 363–64 (1978), *reprinted in* 1978 U.S.Code Cong. and Admin.News 5963, 6319.

> On an initial reading, the language of the House Report appears to support the view that Congress intended that this claim be barred.... On further investigation, one discovers, however, that the language in the Report was not intended to cover all disallowed claims. The House Report cites to Plumb, *The Tax ramifications of the Commission on the Bankruptcy Laws: Tax Procedure,* 88 Harv.L.Rev. 1360, 1388 (1975), which states:

>> Therefore, unless the disallowance of a claim is based on nonprovability of the debt or other grounds not going to the merits, the creditor (including a tax creditor) cannot recover in a subsequent proceeding against the debtor personally if his claim was disallowed by the bankruptcy court. *Id.* at 1388 (citations omitted).

> Unmatured interest is not disallowed on its merits. Rather, the bases for disallow-

ing unmatured interest are the concerns pertaining to administrative convenience and fairness to other creditors, and collateral estoppel should not apply to prevent actions attempting to enforce such claims.

Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under *Bruning* [*Bruning v. U.S.*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) ]. Postpetition interest is disallowed against the bankruptcy estate under section 502. Priority tax claims remain nondischargeable for individual debtors.

*Hanna*, 872 F.2d at 831.

The only authority that the court could find that interest on a nondischargeable debt under section 523(a)(8) is dischargeable is *In re Wasson*, 152 B.R. 639 (Bankr.D.N.M. 1993). *Wasson* was a chapter 13 case in which the debtor proposed to pay a student loan in full under the plan. The bankruptcy court held that the interest would not accrue postpetition and would be discharged upon the payment in full of the principal. The *Wasson* court based its decision on its earlier decision in *In re Christian*, 25 B.R. 438 (Bankr.D.N.M.1982), which involved a tax debt. In *Wasson* and *Christian*, the court distinguished *Bruning, Jordan* and similar cases as not involving the payment of principal and accrued interest in full under a plan. Relying on its earlier decision in *Christian*, the *Wasson* court stated that postpetition interest does not accrue "as a matter of policy" until all creditors are paid in full. *Wasson*, 152 B.R. at 642. In *Christian*, the court concluded that "until all creditors are paid in full, priority unsecured creditors will not be allowed to assess interest accrued after the filing of the petition." *Christian*, 25 B.R. at 439.

Although the court in *Christian* paid lip service to the concept that interest would continue to accrue after the filing date, its decision in effect stopped that accrual by confusing the disallowance of unmatured interest with the non-accrual of interest. The policy that no interest is paid on unsecured claims from the estate unless all unsecured claims are paid in full is embodied in section 502(b)(2). That policy has nothing whatsoev-

er to do with whether interest continues to accrue on such claims and whether interest accruing postpetition may be nondischargeable. The policy of fair treatment underlying section 502(b)(2) is not offended by permitting postpetition interest on a nondischargeable claim to be nondischargeable, because the postpetition interest is disallowed and therefore the claim for that interest receives no share of the estate. Equating disallowance of an unmatured interest claim with non-accrual of interest has no basis in the statute and serves no bankruptcy policy.

■ The portion of GHEAC's claim for postpetition interest is not allowable, notwithstanding the fact that it is also nondischargeable, because section 502(b)(2) plainly states that a claim for unmatured interest is not allowable. The effect of disallowance is to insure that creditors other than GHEAC receive their fair share of the estate. Interest will continue to accrue on the unpaid principal balance of the debt, but the Debtor may not pay the accruing postpetition interest under the plan and need not voluntarily pay it outside the plan during the pendency of the Chapter 13 case. Even if the Debtor pays the full amount of GHEAC's claim as of the filing of the petition pursuant to the plan, the Debtor will remain liable at the conclusion of the plan for postpetition interest that accrues on the decreasing balance of the principal portion of the debt paid under the plan. The automatic stay imposed by section 362 bars GHEAC from attempting to collect the postpetition interest from property of the estate until the Debtor receives a discharge or the case is dismissed, whichever occurs first.

■ The claim filed by GHEAC was filed as a priority claim. Nothing in its proof of claim reflects that it is entitled to any priority under section 507 of the Bankruptcy Code. The burden was on GHEAC to prove its claim in the face of the Debtor's objection; it did not do so beyond the Debtor's admission of the prepetition amount of the claim.

Accordingly, it is herewith

ORDERED that the objection to GHEAC's claim is granted in part and denied in part; and it is

FURTHER ORDERED that the GHEAC's claim is disallowed as a priority claim but is allowed as an unsecured claim in the amount of $5,333.31; and it is

FURTHER ORDERED that to the extent the proof of claim of GHEAC seeks allowance of postpetition interest, the claim is disallowed and may not be paid under the Debtor's plan and need not be paid by the Debtor outside the plan; and it is

FURTHER ORDERED that GHEAC's claim as of the filing of the petition and its claim for postpetition interest accruing on the principal portion of the claim are nondischargeable under section 1128(a) and section 523(a)(8) of the Bankruptcy Code.