

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-1995

# Leeper & Webster v PHEAA

Precedential or Non-Precedential:

Docket 94-3372

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Leeper & Webster v PHEAA" (1995). *1995 Decisions*. Paper 62.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/62

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


Nos. 94-3372 & 94-3373


LISA LEEPER; WILLIAM LEEPER;
DWIGHT WEBSTER and DELLA WEBSTER,
Appellants

v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY,
(PHEAA), STUDENT LOAN SERVICE CENTER;

GARY J. GAERTNER,
Trustee


On Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. Civ. Nos. 93-cv-01905 & 93-cv-01906


Submitted Under 3rd Cir. LAR 34.1(a)
January 23, 1995

Before:  SLOVITER, Chief Judge,
LEWIS and ROSENN, Circuit Judges

(Opinion Filed February 27, 1995)


Edward A. Olds
Olds & Innamorato
Pittsburgh, PA  15223

        Attorney for Appellants

K. Kevin Murphy
Pennsylvania Higher Education
  Assistance Agency
Harrisburg, PA  17102

        Attorney for Appellee

OPINION OF THE COURT


SLOVITER, Chief Judge.


This appeal presents an issue of law: whether interest can accrue after the filing of a Chapter 13 bankruptcy petition on a nondischargeable student loan. The bankruptcy court held that debtors would remain liable for the amount of the post-petition interest that accrued on the unpaid principal of the student loan. The district court affirmed. This appeal presents what appears to be an issue of first impression for the courts of appeals as to which, unfortunately, we have found no helpful legislative history.

## I.

## FACTS AND PROCEDURAL HISTORY

Appellants Della and Dwight Webster ("the Websters") filed a Chapter 13 bankruptcy petition on March 25, 1992.[1] Lisa and William Leeper ("the Leepers") filed a bankruptcy petition on July 28, 1992. Their Chapter 13 plans have been confirmed and are currently in place.

---

1 Chapter 13 of the Bankruptcy Code sets forth the method by which individuals with regular income may adjust their debts through bankruptcy. See 11 U.S.C. §§ 1301–1330 (1988 & Supp. II 1990). A debtor is required to file a plan providing for the submission to the trustee of whatever amount of the debtor's income is necessary to execute the plan, and to provide for the payment of various secured and unsecured claims existing at the time of the filing. See 11 U.S.C. §§ 1321–1322. The plan submitted by the debtor must be presented for confirmation to the bankruptcy court. See 11 U.S.C. § 1325.

The Pennsylvania Higher Education Assistance Authority ("PHEAA") is an unsecured creditor of both the Websters and the Leepers. Both the Websters and the Leepers borrowed money from PHEAA to attend college under the guaranteed student loan program. When the Leepers and the Websters filed for bankruptcy, PHEAA filed claims with the bankruptcy court for the principal amounts owing on the respective loans at the time of the bankruptcy petitions plus all pre-petition interest. Portions of the amounts paid pursuant to their two Chapter 13 plans are being applied to the PHEAA claims.

Neither the Websters nor the Leepers will be able to repay their student loan debts in full during the course of their Chapter 13 plans. Pursuant to 11 U.S.C. § 1328 (1988 & Supp. II 1990), which references 11 U.S.C. § 523(a)(8) (1988 & Supp. II 1990), debts for student loans such as those guaranteed by PHEAA are excepted from discharge in Chapter 13 bankruptcy proceedings unless they fall within a hardship exception or unless they matured seven years before the commencement of the bankruptcy case.[2] The parties agree that unless one of the two exceptions

_____

[2] In 1990, Congress amended § 1328 to except debts arising under 11 U.S.C. § 523(a)(8) from discharge in a Chapter 13 bankruptcy. Section 523(a)(8) includes:

> [A]ny debt . . . for an educational benefit overpayment of loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless--
>
> (A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years

applies, PHEAA will be able to collect the balance of the amount owing on its bankruptcy claims at the end of the sixty-month bankruptcy period for each of the debtors.

In addition, PHEAA intends to accrue interest on the unpaid principal balance of the loans while the two Chapter 13 bankruptcy cases are pending and intends to collect that interest after the plans are completed. Thus, after their plans were confirmed both the Leepers and the Websters (hereafter "the debtors") initiated adversary proceedings in the bankruptcy court against PHEAA, invoking the bankruptcy court's core jurisdiction under 28 U.S.C. § 157 (1988). Each complaint sought an order from the bankruptcy court declaring (1) that PHEAA is not entitled to accrue post-petition interest during the pendency of the Chapter 13 proceedings, and (2) that payments made to PHEAA under the Chapter 13 plans be applied only to the principal balances of the loans.

In its answers to the complaints, PHEAA conceded that all plan payments made by the debtors should be applied only to their bankruptcy claims, which include the outstanding principal balances of the loans and all pre-petition interest. PHEAA

---

(exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8) (1988 & Supp. II 1990).

maintained, however, that it is entitled to accrue post-petition interest on the unpaid principal balance of the student loan debts during the pendency of the Chapter 13 plans.

After the two cases were consolidated and the parties filed cross-motions for summary judgment, the bankruptcy court granted summary judgment in favor of PHEAA.  The bankruptcy court relied primarily upon Bruning v. United States, 376 U.S. 358 (1964), in concluding that post-petition interest may accrue on a nondischargeable student loan debt during the pendency of a Chapter 13 bankruptcy proceeding, although it ordered that all of the debtors' payments during the course of the plan should be applied to the principal balances and the pre-petition interest. The court declined to address the debtors' claim that the accrual of post-petition interest would impose an undue hardship on the debtors under 11 U.S.C. § 523(a)(8)(B).  The court determined that the hardship claim would not be ripe for review until the debtors have completed all payments under the Chapter 13 plan. That determination is not before us in this appeal.

The district court entered an order affirming the bankruptcy court's decision, essentially adopting the reasoning of the bankruptcy court.  The debtors appeal.

We have jurisdiction over the debtors' appeal pursuant to 28 U.S.C. § 158(d) (1988).  Because the only issues presented in this appeal involve the proper interpretation of the Bankruptcy Code, our review is plenary.  See In re Roth American, Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also In re Abbotts Dairies, 788 F.2d 143, 147 (3d Cir. 1986).

## II.

## DISCUSSION

### A.

Under the Bankruptcy Code, creditors are not entitled to include unmatured (or "post-petition") interest as part of their claims in the bankruptcy proceedings. See 11 U.S.C. § 502(b)(2) (1988); see also Sexton v. Dreyfus, 219 U.S. 339, 344 (1911) (noting that this rule is derived from a fundamental principle of the English bankruptcy system). This longstanding rule is designed to assure that no creditor gains an advantage or suffers a loss due to the delays inherent in liquidation and distribution of the estate. American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry., 233 U.S. 261, 266 (1914); see also In re Hanna, 872 F.2d 829, 830-31 (8th Cir. 1989). The prohibition against claims for post-petition interest generally applies even in instances where the claims are based upon underlying debts that are not dischargeable. See, e.g., City of New York v. Saper, 336 U.S. 328, 337-38 (1949); see also In re JAS Enterprises, Inc., 143 B.R. 718, 719 (Bankr. D. Neb. 1992).

In Bruning v. United States, 376 U.S. 358 (1964), the precedent of most significance for the issue before us, the Supreme Court distinguished between denial of post-petition interest against the bankruptcy estate on a nondischargeable debt and the accrual of interest on a nondischargeable debt during the pendency of the bankruptcy to be collected from the debtor after the bankruptcy proceeding is completed. Id. at 362-63. In Bruning, a taxpayer who had been discharged from bankruptcy

challenged the IRS's contention that it was entitled to collect post-petition interest on a nondischargeable tax debt after the conclusion of the taxpayer's bankruptcy. The taxpayer based his argument on the traditional rule barring creditors from claiming post-petition interest from the bankruptcy estate, a rule now codified in 11 U.S.C. § 502(b)(2). The Bruning Court, in a unanimous opinion authored by Chief Justice Warren, upheld the IRS's position.

The Court's reasoning is directly applicable to the issue before us. Because Congress made the tax debt nondischargeable, it "clearly intended that personal liability for unpaid tax debts survive bankruptcy." Bruning, 376 U.S. at 361. The Court then stated that it did not have any "reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts." Id. The Court reasoned that "[i]n most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt." Id. at 360. Thus, the Court concluded, if a tax debt was nondischargeable, post-petition interest on that debt would also be nondischargeable. Id. at 363. The Court held that the policy reasons for denying post-petition interest from the bankruptcy estate, which it described as "the avoidance of unfairness as between creditors" and "the avoidance of administrative inconvenience," were not applicable to an action brought against the debtor personally. Id. at 362-63.

While Bruning was decided prior to the enactment of the Bankruptcy Code, it has been applied by other courts of appeals to cases arising under the Code.  See Burns v. United States (In re Burns, 887 F.2d 1541, 1543 (11th Cir. 1989) (specifically addressing the issue of whether the Bruning holding survived the enactment of the Bankruptcy Code of 1978 and answering affirmatively); In re Hanna, 872 F.2d at 830-31 (same); see also Bradley v. United States, 936 F.2d 707, 709-10 n.3 (2d Cir. 1991) (declining to reach the issue, but acknowledging that "the weight of authority" permits accrual of interest on nondischargeable tax debts during a bankruptcy); Paulson v. United States (In re Paulson), 152 B.R. 46, 49-51 (Bankr. W.D. Pa. 1992) (concluding that the Bruning rule applies to actions arising under the Bankruptcy Code).

In addition, while Bruning involved the accrual of post-petition interest on a nondischargeable tax debt, its reasoning has been applied to other types of nondischargeable debts.  See In re Fullmer, 962 F.2d 1463, 1468 (10th Cir. 1992) (applying Bruning to post-petition interest on a nondischargeable tax penalty); In re Burns, 887 F.2d at 1543 (same); In re Brace, 131 B.R. 612, 613-14 (Bankr. W.D. Mich. 1991) (holding that post-petition interest may accrue on a debt that was nondischargeable under 11 U.S.C. § 532(a)(2) because it arose from fraudulent misrepresentations); In re Kellar, 125 B.R. 716, 720-21 (Bankr. N.D.N.Y. 1989) (same).

The Bruning decision therefore stands for the general proposition that creditors may accrue as to the debtor personally

post-petition interest on nondischargeable debts while a bankruptcy is pending. The bankruptcy court and the district court relied primarily upon this proposition in granting and affirming summary judgment in favor of PHEAA in this case. But while courts have applied the Bruning rule to permit accrual of interest on nondischargeable debts, no court of appeal has specifically applied the rule in the Chapter 13 context. In this case, the debtors argue that Bruning is inapplicable to Chapter 13 bankruptcies and to student loans in particular.

B.

The debtors contend that it is unfair to apply Bruning to Chapter 13 debtors because a Chapter 13 bankruptcy plan cannot make any provision for the payment of the post-petition interest that accrues on a nondischargeable debt. The debtors fail to explain why this problem distinguishes Chapter 13 from Chapter 7 or Chapter 11. In all situations where the Bruning rule is applicable, the bankruptcy plan cannot make allowances for post-petition interest; the interest merely accrues and is collectable against the debtor after the bankruptcy is completed. Thus, the debtors' effort to distinguish Chapter 13 cases on this ground is unpersuasive.

The debtors argue that we should follow the authority of the New Mexico bankruptcy court in In re Wasson, 152 B.R. 639 (Bankr. D. N.M. 1993), that rejected a creditor's objection to the confirmation of a debtor's Chapter 13 plan that failed to provide for post-petition interest on a nondischargeable student loan. Id. at 642. Notwithstanding the fact that the Wasson

court explicitly limited its holding disallowing the claim for post-petition interest on the nondischargeable student loan to instances where the underlying debt was paid in full from the bankruptcy estate, id. at 642, the debtors rely on Wasson for the general principle that Bruning is inapplicable to Chapter 13 cases.

The result in Wasson has been expressly disapproved in In re Shelbayah, 165 B.R. 332, 337 (Bankr. N.D. Ga. 1994), and Branch v. UNIPAC/NEBHELP (Matter of Branch), 175 B.R. 732 (Bankr. D. Neb. 1994), both of which held that post-petition interest may accrue on a nondischargeable student loan during the debtor's Chapter 13 bankruptcy. In Shelbayah, the debtor had conceded that the creditor could file a claim for the principal plus all pre-petition interest, but objected to the inclusion of the post-petition interest in the claim. The debtor argued that the creditor was barred from filing a claim for post-petition interest by 11 U.S.C. § 502(b)(2), and, further, that such interest was dischargeable pursuant to 11 U.S.C. § 1328(a) (1988 & Supp. II 1990), which permits discharge of all debts "disallowed under section 502." Shelbayah, 165 B.R. at 334.

The Shelbayah court, applying the analysis of Bruning, held that while the creditor was barred from claiming the post-petition interest in the bankruptcy proceeding, such post-petition interest could accrue during the course of the bankruptcy and would not be dischargeable. Id. at 337. The court noted that "[a]lmost all courts that have considered the issue presented have concluded that the disallowance of

postpetition interest has no effect on the dischargeability of a claim for, and an individual's future liability for, such interest." Id. at 335 (citing, inter alia, Bruning, 376 U.S. 358 (1964)). The Shelbayah court acknowledged that the Wasson decision reached a contrary result, but concluded that the Wasson court's reasoning was based on a decision that "confus[ed] the disallowance of unmatured interest with the non-accrual of interest." Shelbayah, 165 B.R. at 337. The court held that while section 502(b)(2) bars claims for unmatured interest against the bankruptcy estate, it should not preclude the accrual of interest on nondischargeable claims against the debtor. Id.

Even more recently, the bankruptcy court in Branch held that post-petition interest may accrue on a nondischargeable student loan and is nondischargeable, therefore remaining an obligation of the debtor after the bankruptcy case is completed. Matter of Branch, 175 B.R. at 734-35. Branch rejects the Wasson analysis as "contrary to the logic of [In re Hanna], the authority in [the Eighth] circuit." Id. at 734. In re Hanna followed Bruning and held that a debtor remains personally liable for post-petition interest on a nondischargeable tax debt after bankruptcy proceedings are completed. See 872 F.2d at 831. We agree that the Wasson decision failed to distinguish properly between a claim for unmatured interest and the accrual of post-petition interest on a nondischargeable debt, and that the discharge of post-petition interest on nondischargeable debts was clearly inconsistent with the mandate of Bruning.

With the exception of Wasson, every court that has addressed the issue has determined that interest may accrue on nondischargeable student loans during the pendency of a Chapter 13 bankruptcy plan.  See Jordan v. Colorado Student Loan Program (In re Jordan), 146 B.R. 31, 32-33 (D. Colo. 1992) (affirming denial of debtor's motion to confirm a Chapter 13 plan based on creditor's objection that the plan improperly provided that interest on the debtor's non-dischargeable student loans would be tolled while the bankruptcy was pending); Ridder v. Great Lakes Higher Educ. Corp. (In re Ridder), 171 B.R. 345, 346-47 (Bankr. W.D. Wis. 1994) (post-petition interest on a nondischargeable student loan may be collected after bankruptcy concluded); see also In re Crable, 174 B.R. 62, 63 (Bankr. W.D. Ky. 1994) (permitting accrual of post-petition interest on nondischargeable debt for child support during pendency of Chapter 13 proceeding and noting that cases involving student loans are analogous).

It remains to be considered whether there is any validity to the debtors' argument that the bankruptcy court improperly created two classes of debtors in Chapter 13 cases involving nondischargeable student loans.  The debtors base this argument on the bankruptcy court's acceptance of the premise in Wasson that debtors who will completely satisfy their student loan obligations during the course of the Chapter 13 plan will have no obligation to pay any post-petition interest,[3] whereas

---

[3]  In In re Christian, 25 B.R. 438, 438-39 (Bankr. D. N.M. 1982), the New Mexico bankruptcy court had held that the Bruning rule did not apply to a tax debt which was fully paid out of the estate.  Wasson followed Christian and reasoned that "[a]s

those who, like themselves, will not have satisfied all of their loan obligations during the course of the Chapter 13 proceeding will be obligated to pay post-petition interest on the loans. The debtors then reason that because there is no statutory basis for such a distinction, this court should extend the Wasson reasoning to bar the accrual and collection of all post-petition interest on all nondischargeable student loans in Chapter 13 cases, whether or not the debt was paid in full during the bankruptcy.

The premise of the debtors' "two class" argument is that no post-petition interest accrues when a nondischargeable debt is fully paid out of the estate in the course of the bankruptcy proceeding. The difficulty with the debtors' argument is that this court has already held that the Bruning reasoning applies even in instances where the debt is paid in full. In Hugh H. Eby Co. v. United States, 456 F.2d 923 (3d Cir. 1972), a taxpayer in a pre-Code case where the underlying debt was paid in full argued that it was entitled to recovery of post-petition interest on taxes that it had paid. The taxpayer sought to distinguish Bruning, which would have permitted the interest to accrue, on the ground that in Bruning the taxes had not been paid in full out of the estate. Id. at 925. The taxpayer also argued

Bruning does not apply to cases in which tax debts are fully paid out of the estate, it logically follows that Bruning should not apply to student loan debts which are fully paid out of the estate." In re Wasson, 152 B.R. 639, 642 (Bankr. D. N.M. 1993).

in Eby that because only liability for post-petition, pre-confirmation interest was at issue, Bruning was inapplicable.

We rejected both distinctions.  We stated: "[I]n Bruning, the Supreme Court held that all post-petition interest, including interest accrued during the pendency of the bankruptcy proceeding, could be collected by the Government from after-acquired assets of the debtor.  A fortiori, post-petition, pre-confirmation interest is also collectible."  Id.  We then stated, in language of particular relevance here, "That the underlying taxes were later paid in full here does not affect the fact that appellant had the use of the Government's money during the pendency of the reorganization proceeding, and that since the underlying debt is not discharged . . . neither is the interest which accrues by reason of the use of such money during the pendency of the proceedings."  Id.; see also United States v. River Coal Co., Inc., 748 F.2d 1103, 1107 (6th Cir. 1984) (holding that the Bruning rule applied "regardless of whether the underlying debt has been paid or not").

Eby is good precedent.  We cannot distinguish it, even if we were so inclined, on the ground that it is a pre-Code case because as we noted earlier, Bruning has been held as equally applicable to cases under the Bankruptcy Code.  It follows from our construction of Bruning in Eby that even if the nondischargeable debt has been paid in full by the bankruptcy estate, accrual of post-petition interest is not precluded. Therefore the two-class problem identified by the debtors is eliminated.

C.

Finally, the debtors argue that Bruning has been overruled by the automatic stay provision of the Bankruptcy Code. See 11 U.S.C. § 362(a) (1988). Relying on cases suggesting that the automatic stay provision of the Bankruptcy Code should be broadly construed, the debtors contend that the accrual of interest against them while a bankruptcy is pending violates the stay. They reason that insofar as Bruning permitted such accrual prior to the enactment of the Code, it is no longer valid.

The debtors' argument here rests on the dubious assertion that the act of charging interest on a nondischargeable claim is essentially an act to "collect" a debt. See Appellant's Brief at 24. Because the automatic stay provision bars the collection of any debts from the debtor while a bankruptcy is pending, see 11 U.S.C. §§ 362(a)(6), the debtors reason that charging interest must necessarily be barred.

As the debtors acknowledge, none of the cases applying Bruning to post-Code bankruptcy cases has addressed the effect of the automatic stay provision on the accrual of post-petition interest. Indeed, those cases permit the accrual of such interest with no mention of the automatic stay provision. Moreover, as PHEAA notes, the cases cited by the debtors do not support the debtors' theory. Instead, those cases only support the propositions that the enforcement of a judicial lien, see, e.g., In re Miller, 98 B.R. 110, 113-14 (Bankr. N.D. Ga. 1989), and the garnishment of wages, see, e.g., In re Hulvey, 102 B.R. 703, 704-05 (Bankr. C.D. Ill. 1988), after the filing of a

bankruptcy proceeding violate the automatic stay.  The actions in those cases, which involve affirmative efforts by the creditor to collect from the debtor, differ significantly from the mere accrual of interest, which requires a wholly separate action for collection.

In light of the lack of support for the debtors' theory in either the Code or caselaw, and in light of the continued viability of Bruning in bankruptcy cases arising under the Code, see Burns, 887 F.2d at 1543, we decline to hold that the automatic stay provision of the Bankruptcy Code overruled Bruning.  We conclude that the mere accrual of post-petition interest does not violate the automatic stay.

D.

We are not unaware that the result in this case may be viewed as harsh by student debtors saddled with the mounting costs of higher education.  In this case the Websters listed the claim of PHEAA as totalling a combined $34,302.74 on their bankruptcy schedules.  The Leepers listed the claim of PHEAA as totalling a combined $18,542.26 on their bankruptcy schedules.  During the Websters' Chapter 13 plan, PHEAA will accrue almost $15,000 in interest on the Websters' debt.  During the Leepers' Chapter 13 plan, PHEAA will accrue almost $8,000 in interest on the Leepers' debt.  As a result, both the Leepers and the Websters will emerge from bankruptcy owing PHEAA more money than was owed to PHEAA at the time of their bankruptcy petitions.

However, whether Bruning should be applied to permit post-petition interest to accrue on nondischargeable student

loans is a political decision.  Congress, which created the student loan program and which then decided for policy reasons to make debts arising from those loans nondischargeable (presumably with the knowledge that under Bruning post-petition interest would then also be nondischargeable) may choose to amend the statute with respect to the treatment of post-petition interest. But until and unless it does so, we see no basis for the courts to change the longstanding rule as to nondischargeability of post-petition interest.

Congress did provide for amelioration of the effect of nondischargeability in appropriate circumstances by authorizing the bankruptcy court to discharge the remainder of a debt for a student loan if, inter alia, the debt "will impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8)(B) (1988); see note 2 supra.  On this appeal, we have no occasion to determine whether the debtors status at the close of bankruptcy will be sufficient to support a finding of "undue hardship."  Undoubtedly, the amount of post-petition interest that will have accrued on the loans is a factor that the bankruptcy court will consider in making its "undue hardship" determination.

**III.**

**<u>CONCLUSION</u>**

For the foregoing reasons, we conclude that the bankruptcy court did not err in ruling that PHEAA is entitled to accrue interest on the nondischargeable student loans during the pendency of the debtors' Chapter 13 bankruptcies. We therefore will affirm the order of the district court.