**METRO COMMERCIAL REAL ESTATE, INC., Plaintiff,**

v.

**Antonio REALE, Defendant.**

**Civil Action No. 95–2382.**

United States District Court, E.D. Pennsylvania.

June 19, 1997.

Jon C. Sirlin, Philadelphia, PA, for Plaintiff.

James A. Kozachek, Morristown, NJ, A. Dennis Terrell, New Vernon, NJ, Joseph M. Cerra, Morristown, NJ, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Before me is the Motion of Plaintiff Metro Commercial Real Estate, Inc. ("Plaintiff") to Amend Judgment to Include Contractual Interest. A judgment in favor of Plaintiff for $690,750.00 was entered against Defendant Antonio Reale ("Defendant") on October 10, 1996, following a jury verdict on Plaintiff's claim for breach of contract. Plaintiff now requests that the judgment be amended to include interest it claims accrued under the terms of the contract. Defendant opposes Plaintiff's motion on grounds that the entire amount of interest claimed by Plaintiff is barred as "postpetition interest" under the Bankruptcy Code, or alternatively, on grounds that the amount claimed is excessive because the interest should have been calculated as simple interest accruing from the date Plaintiff's complaint was filed (April 21, 1995), rather than as compounded interest accruing from the date the brokered leases were terminated (December 23, 1993). For the reasons stated below, I will grant Plaintiff's motion, with the exception that the amount of interest shall be recomputed as simple rather than compound interest. Accordingly, Plaintiff will be directed to submit an updated motion setting forth the amount of simple interest it claims is due as of the filing date of its new motion, and Defendant will be given an opportunity to respond solely for purposes of contesting any inaccuracies in Plaintiff's calculations.

## I. DEFENDANT'S LIABILITY FOR CONTRACTUAL INTEREST

Plaintiff claims that it is entitled to interest on the basis of paragraph 6(G) of the commissions contract, which provides that "[i]n the event [Lan Associates] fails to make payments within the time limits set forth herein, then from the date due until paid, the delinquent amount shall bear interest at prime." Defendant does not contest Plaintiff's general premise that the obligation to pay interest under paragraph 6(G) is a valid contractual debt of Lan Associates XIV, L.P. ("Lan Associates"). Rather, Defendant contends that he, as the general partner of Lan

Associates, cannot be liable for the interest because Lan Associates, as a result of its bankruptcy, is not liable for the interest.

 Defendant's argument is unavailing. Assuming for present purposes that Lan Associates received a discharge in bankruptcy as Defendant asserts, it is true that the discharge would bar Plaintiff from moving against Lan Associates' assets to satisfy its debt for the contractual interest, just as the discharge bars Plaintiff from pursuing Lan Associates for the underlying commissions. *See* 11 U.S.C.A. § 524(a) (West 1993 & Supp.1997). A bankruptcy discharge, however, does not affect the liability of any other entity liable on the debtor's debt, but rather only bars a creditor from pursuing the discharged debtor for that debt. Section 524(e) of the Bankruptcy Code specifically provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C.A. § 524(e) (West 1993). Thus, a creditor may seek to satisfy the debt from any individual or entity other than the debtor that is also liable for the debt, such as a partner of a discharged debtor-partnership. *See, e.g., Sealey Bros. v. Farmers Home Admin. (In re Sealey Bros.),* 158 B.R. 801, 806 (Bankr.W.D.Mo.1993). Defendant, as a general partner of Lan Associates, is liable for the contractual debts of Lan Associates.[1] *See* Del.Code Ann. tit. 6, § 17–403(b) (1993); Del.Code Ann. tit. 6, § 1515(a)(2) (1993).[2] Thus, Lan Associates' discharge in bankruptcy is no bar to Plaintiff's claim against Defendant for interest, which is a contractual debt of the partnership for which Defendant is also liable.

██ Defendant relies on § 502(b)(2) of the Bankruptcy Code, however, to support his position that even if he is liable for the commissions themselves, he is not liable for the interest that accrued on those commissions under the terms of the commissions contract. Section 502(b)(2) of the Bankruptcy Code provides that when a party in interest objects to a claim filed against the debtor's bankruptcy estate, "the court ... shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that such claim is for unmatured interest." 11 U.S.C.A. § 502(b)(2) (West 1993). Defendant contends that because all of the interest that Plaintiff claims under the contract accrued after Lan Associates filed for bankruptcy in July 1992 ("postpetition interest"), this interest was "unmatured interest" on the date the petition for bankruptcy was filed and that therefore Plaintiff's claim for the contractual interest would have been disallowed had Plaintiff filed a claim against Lan Associates' bankruptcy estate. Defendant reasons that because Plaintiff could not have recovered the contractual interest from Lan Associates in the bankruptcy proceedings, it cannot recover such interest from Defendant who, as a general partner of Lan Associates, is only derivatively liable for the obligations of the partnership.

██ Defendant misunderstands the operation of § 502(b)(2). Assuming for present purposes that Plaintiff's claim for contractual interest would have been disallowed had it filed a claim against Lan Associates' bankruptcy estate, this circumstance would not relieve Defendant of liability for the contractual interest in a separate action brought against Defendant after the termination of the bankruptcy proceedings. Section 502(b)(2) does not substantively alter the debt for contractual interest, but rather for reasons of bankruptcy policy prohibits creditors from asserting claims for such interest against the debtor's bankruptcy estate. The United States Supreme Court has explained that the "basic reasons for the rule denying post-petition interest as a claim against the

---

1. Plaintiff has not contested Defendant's assertion that Lan Associates is a Delaware limited partnership, and thus for present purposes I will assume Lan Associates is a Delaware limited partnership.

2. Given Defendant's representation that Lan Associates filed for bankruptcy and subsequently received a bankruptcy discharge, it appears that permission for Plaintiff to execute against the assets of Defendant would be warranted, were Defendant inclined to raise this issue again. *See* Del.Code Ann. tit. 6, § 17–403(d)(4) (Supp.1994); *cf.* § 17–403(d)(2).

bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience." *Bruning v. United States,* 376 U.S. 358, 362, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964).[3] The reason postpetition interest is disallowed is

> not because the claims had lost their interest-bearing quality during that period, but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest, from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the Receivership; and if as a result of good fortune or good management, the estate proved sufficient to discharge the claims in full, interest as well as principal should be paid.

*Id.* at 362 n. 4, 84 S.Ct. at 909 n. 4 (quoting *American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry.,* 233 U.S. 261, 266, 34 S.Ct. 502, 504, 58 L.Ed. 949 (1914)). Furthermore, the rule barring postpetition interest avoids the "administrative inconvenience of continuous recomputation of interest causing recomputation of claims." *Id.* (quoting *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 164, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946)). Thus, the rule is imposed for reasons peculiar to bankruptcy administration and does not affect the interest obligation itself, but rather only exempts the assets of the bankruptcy estate from claims based on that obligation.

The operation of this rule as only a restriction in bankruptcy and not as a substantive alteration of the interest obligation can be seen in cases involving nondischargeable debts. In *Bruning,* a taxpayer who had received a general discharge in bankruptcy remained personally liable on a nondischargeable tax assessment. *See id.* at 359, 84 S.Ct. at 907. Although the taxpayer did not contest his continuing liability for the tax assessment itself, he objected to the claim of the United States for interest on the tax assessment that had accrued after the taxpayer had filed for bankruptcy ("postpetition interest"). *See id.* The taxpayer argued that "the traditional rule which denies postpetition interest as a claim against the bankruptcy estate also applies to discharge the debtor from personal liability for such interest even if the underlying tax debt is not discharged." *Id.* at 362, 84 S.Ct. at 908.

The Supreme Court rejected this argument. The Court first explained that interest is "an integral part of a continuing debt" and that if Congress intended a particular debt to be nondischargeable, presumably it "intended personal liability to continue as to the interest on that debt as well as to its principal amount." *Id.* at 360, 84 S.Ct. at 907–08. The Court then examined the rule barring claims for postpetition interest and found nothing in the rule directed to the issue of discharge, but rather only a rule of distribution with no reason for application outside of bankruptcy. It explained that the basic reasons for the rule—fairness to creditors and administrative convenience—were "inapplicable to an action brought against the debtor personally": "collection of post-petition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other

---

**3.** Although *Bruning* was decided before the Bankruptcy Reform Act of 1978 was enacted, the Third Circuit has applied *Bruning* to cases arising under § 502(b)(2) of the Bankruptcy Reform Act of 1978. *See Leeper v. Pennsylvania Higher Educ. Assistance Agency,* 49 F.3d 98, 104–05 (3d Cir.1995).

creditors." *Id.* at 363, 84 S.Ct. at 909. Therefore, because the Court found "the reasons—and thus the rule—inapplicable," *id.*, it held that post-petition interest on a nondischarged tax debt would remain a personal liability of the debtor after bankruptcy. *See id.*

Likewise, relying on the reasoning of *Bruning,* the Third Circuit held that a debtor would remain personally liable for postpetition interest accruing on a nondischargeable student loan following the termination of bankruptcy. *See Leeper v. Pennsylvania Higher Educ. Assistance Agency,* 49 F.3d 98, 104 (3d Cir.1995). The Third Circuit explained that although § 502(b)(2) would bar claims against the bankruptcy estate during the pendency of the bankruptcy, § 502(b)(2) would not prohibit the interest from accruing during the bankruptcy or from being collected from the debtor's personal assets after the termination of bankruptcy as part of the debtor's nondischargeable obligation. *See id.* at 101–02. Other courts have also relied on *Bruning* to reach similar results. *See, e.g., Fullmer v. United States (In re Fullmer),* 962 F.2d 1463, 1467–68 (10th Cir.1992) (holding that although a claim for postpetition interest against the bankruptcy estate would be disallowed under § 502(b)(2), the debtor remained personally liable for that postpetition interest following bankruptcy because the interest accrued on a nondischargeable tax debt); *Hanna v. United States (In re Hanna),* 872 F.2d 829, 831 (8th Cir.1989) (holding that although postpetition interest must be disallowed against the bankruptcy estate under § 502(b)(2), the debtors were personally liable subsequent to bankruptcy proceedings for postpetition interest accruing on nondischargeable tax debts); *In re Shelbayah,* 165 B.R. 332, 337–38 (Bankr.N.D.Ga. 1994) (holding that § 502(b)(2) barred a claim against the bankruptcy estate for postpetition interest on a nondischargeable student loan, but that the debtor would remain personally liable for the postpetition interest after the close of bankruptcy).

Moreover, the *Bruning* principle applies whether the postpetition interest is sought in post-bankruptcy proceedings against the debtor itself, as in the foregoing cases, or against any co-debtors liable for the debt, as is the case here. Thus, in *In re El Paso Refining, Inc.,* 192 B.R. 144 (Bankr. W.D.Tex.), *rev'd, El Paso Refining, Inc. v. IRS,* 205 B.R. 497 (W.D.Tex.1996), the bankruptcy court held that a guarantor was liable for interest that accrued on the obligor's debt after the obligor filed for bankruptcy. *See id.* at 146. The court explained that § 502(b)(2) "only prevents unmatured interest from becoming an *allowed claim* against the debtor's *estate* " but that it "does not toll the *accrual* of unmatured interest." *Id.* Thus, § 502(b)(2) did not toll or eliminate the guarantor's obligation to pay interest. *See id.* Furthermore, even though the obligor itself would obtain a bankruptcy discharge on the debt and accompanying interest, § 524(e) provided that the obligor's bankruptcy discharge would not relieve any other co-debtor, such as the guarantor, from liability for the obligor's debts. *See id.* Thus, the guarantor remained liable for the obligor's postpetition interest, even if the obligor itself was relieved of the obligation. *See id.; see also In re Heron, Burchette, Ruckert & Rothwell,* 148 B.R. 660, 679 (Bankr.D.D.C.1992) (explaining that although postpetition interest could not be collected from the debtor's estate under § 502(b)(2), the debtor's partners and guarantors would remain personally liable for the postpetition interest).

Thus, even if Plaintiff's claim for the contractual interest would have been disallowed under § 502(b)(2) had Plaintiff filed a claim against the bankruptcy estate of Lan Associates, § 502(b)(2) would not prevent the contractual interest from accruing during the pendency of Lan Associates' bankruptcy proceedings, nor would it have discharged the obligation of Lan Associates or any other co-debtor to pay that interest. Although Lan Associates' obligation on the commissions contract, which includes the interest provided in paragraph 6(G) of the contract, was subsequently discharged under § 524(a) of the Bankruptcy Code, that discharge did not "affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C.A. § 524(e). Lan Associates' debt on the commissions contract, including the contractual interest, remains valid and may be collected from any other entity liable for

Lan Associates' contractual debts, including Defendant here. Section 502(b)(2) simply has no effect on the obligation to repay the contractual interest and no application to Plaintiff's non-bankruptcy action against Defendant.

Defendant's reliance on *In re United States Lines, Inc.,* 199 B.R. 476 (Bankr. S.D.N.Y.1996) is misplaced. The court in that case considered an objection to a creditor's claim for postpetition interest filed against the bankruptcy estate of the debtor. *See id.* at 478. The court disallowed the claim for postpetition interest under § 502(b)(2). *See id.* at 481. The court made no decision whatsoever about the effect of § 502(b)(2) on the liability of a co-debtor for postpetition interest in a separate non-bankruptcy action.

Defendant relies upon the court's statement in *United States Lines* that the debtor's insurer "cannot be derivatively liable if this Court disallows the interest portion" of the creditor's claim under § 502(b)(2) to support his position that he is not liable for Lan Associates' postpetition interest. *Id.* at 483. This statement is hard to assess, however, because the opinion in *United States Lines* does not identify the nature of the insurer's liability, if any, to the debtor's creditors; in any case, to the extent the statement could be understood to mean that § 502(b)(2) discharges a co-debtor's liability for postpetition interest, I would decline to follow it as contrary to the decisions and reasoning set forth in *Bruning, Leeper,* and the other authorities cited above.

To conclude, § 502(b)(2) neither tolled the accrual of contractual interest under the commissions contract nor discharged Defendant's liability for the contractual interest, and accordingly, as a general partner of Lan Associates, Defendant is liable for the contractual interest due under the commissions contract.

## II. COMPOUND OR SIMPLE INTEREST

Defendant objects to Plaintiff's calculation of the amount of interest on grounds that the interest should be calculated as simple interest at prime as of the date due, rather than as compounded interest based on a floating interest rate. Plaintiff has cited to no provision of the contract that provides for compounded interest or a floating interest rate, nor has Plaintiff cited any authority favoring its computation. In the absence of any provision in the contract otherwise, I will award simple interest based on the prime interest rate in effect on the date due.

## III. PERIOD OF ACCRUAL

The contract states that if Lan Associates failed to make payments on the commissions "within the time limits set forth herein, then from the date due until paid, the delinquent amount shall bear interest at prime." Plaintiff asserts that the "date due" must be December 23, 1993[4] at the latest "because this was the date that the Bankruptcy Court ordered Plaintiff's Exclusive Agreement terminated and therefore it was that date that it became certain that Plaintiff would not receive its commissions." (Pl.'s Mot. Amend J. Include Contractual Interest, ¶ 4 (footnote omitted).) Thus, Plaintiff calculated the amount of interest starting from December 23, 1993.

Defendant objects that "interest should only be awarded from the date of filing of the complaint herein, as that was the first time plaintiff made a demand against defendant under the contract." (Def.'s Opp. Pl.'s Mot. Amend J. for an Award of Interest from December 23, 1993, at 5.) Defendant makes no other objection to Plaintiff's identification

4. Although Plaintiff states in its motion that the "date due" was December 12, 1993, rather than December 23, 1993, the December 12 date appears to be an inadvertent error. Plaintiff appended a footnote to the December 12 date in which it stated that "[t]his date was stipulated by the parties," and the Notes of Testimony show that the parties stipulated to the date of December 23, not December 12, (*see* Trial Tr. 10/09/96,

at 22–23). Furthermore, Plaintiff states in the following paragraph of its motion that it calculated the interest rate for a period beginning on December 23, 1993, not December 12, 1993, (*see* Pl.'s Mot. Amend J. Include Contractual Interest, ¶ 5). Therefore, I will assume that Plaintiff intended to identify December 23, 1993 as the relevant date, rather than December 12, 1993.

of December 23, 1993 as the "date due" and devotes no more than the sentence just quoted to support its objection.

Defendant has cited no provision in the contract that expressly or impliedly provides that interest will not accrue until Plaintiff makes a demand for the commissions, nor have I been able to locate any such provision. Neither has Defendant cited any other authority that would impose such a condition on the parties. Under the plain language of the agreement, the only condition that must be satisfied before interest begins to accrue is that Lan Associates "fails to make payments within the time limits set forth herein." Defendant does not suggest that Lan Associates made timely payments. Therefore, I conclude that Defendant's objection must be denied, and there being no other objection, I will grant Plaintiff's request for an award as calculated from December 23, 1993 forward. An order will be entered accordingly.

### ORDER

**AND NOW,** this 19th day of June, 1997, **IT IS ORDERED** as follows:

(1) Plaintiff's Motion to Amend Judgment to Include Contractual Interest (document # 37) is **GRANTED;**

(2) Plaintiff shall submit a new motion **no later than July 3, 1997,** requesting amendment of the judgment to include contractual interest in an amount equal to that which has accrued between December 23, 1993 and the approximate filing date of the new motion, calculated as simple interest based on the prime interest rate in effect on December 23, 1993; and

3. Defendant may file a response to the motion described in paragraph 2 of this Order **no later than July 10, 1997,** solely for purposes of contesting any inaccuracies in Plaintiff's calculations.